**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————

UNITED STATES *ex rel.* A. SCOTT       )
POGUE,                                                    )
                                                               )
              Plaintiff,                                  )
                                                               )
       v.                                                     )        **Civil Action No. 99-3298 (RCL)**
                                                               )        **Part of Misc. No. 01-50 (RCL)**
DIABETES TREATMENT CENTERS       )
OF AMERICA, INC., *et al.*,                    )
                                                               )
              Defendants.                            )
———————————————————————)

**MEMORANDUM OPINION**

This case is one of several consolidated for pretrial purposes by the Multidistrict

Litigation Panel.  In short, the relator, A. Scott Pogue, has brought a False Claims Act ("FCA")

case against Diabetes Treatment Centers of America, Inc. ("DTCA"), for an alleged kickbacks-

for-referrals scheme.  Before the Court are several motions related to basic housekeeping and

scheduling matters, as well as motions to strike related to a potential expert witness, and DTCA's

motion for judgment on the pleadings, which seeks to dismiss certain claims as time-barred.

**I.       Miscellaneous Motions**

Several motions are unopposed or submitted with the joint consent of the parties.  First is

the Motion [110 & 1180] to Dismiss All Claims Against the Defendant Atlanta Physicians,

which seeks dismissal of the "Atlanta Physicians" defendants, namely Paul C. Davidson, M.D.;

Bruce W. Bode, M.D.; Judson G. Black, M.D.; Robert Dennis Steed, M.D.; and Anthony E.

Karpas, M.D.  Dismissal is with prejudice as to the relator, A. Scott Pogue, and without prejudice

as to the United States.  The Motion [110] is GRANTED.

Next on the docket are several housekeeping motions.  The United States' Unopposed

Motion [111] to File Surreply to DTCA's Motion to Reconsider; DTCA's Motion [113] to File

Response Brief in Excess of Ten Pages; the United States' Unopposed Motion [116] for

Extension of Time to File Reply to Motion to Strike the Expert Report of Eric Yospe; the United

States' and Relator's Unopposed Motions [1189 & 1190] for Extension of Time to File Reply to

Motion to Strike Report and Designation of DTCA Expert Witness Eric Yospe; DTCA's Motion

[1204] to File a Surreply to United States' and Relator's Motions to Strike; DTCA's Unopposed

Motion [1197] for Leave to File Supplemental Briefs Regarding DTCA's Motion to Compel; the

United States' Motion [1185] for Leave to File Surreply; and Relator's Unopposed Motion for

Leave to File Surreply to DTCA's Motion for Judgment on the Pleadings [125] are all

GRANTED.[1]  Relator's Motion [126] for Leave to File Opposition to Summary Judgment

Instanter is DENIED as moot.

Also DENIED is the Joint Motion [1140] to Amend Scheduling Order, which has been

mooted by the passage of time.  The parties are ORDERED to meet and confer within thirty (30)

days of this date and submit to the Court a proposed Scheduling Order that addresses all

outstanding matters.  Assuming the parties agree on the Scheduling Order, the Court will move

with dispatch to enter it upon receipt.

---

[1]The last of these, Relator's Motion [125] for Leave to File Surreply, explains why relator
believed that his opposition to DTCA's motion for judgment on the pleadings was timely filed.
Given the confusion that appeared to plague both parties about which of several seemingly
contradictory scheduling-related orders applied, the Court deems the opposition to DTCA's
motion for judgment on the pleadings timely filed.  The alternative Motion [126] for Leave to
File Opposition to Summary Judgment Instanter is accordingly denied as moot.

## II.    Motion to Reconsider

DTCA's Motion [106] to Reconsider and Amend asks the Court to revisit its June 2, 2006 Memorandum Opinion and Order, which denied DTCA's motion [84] to compel the federal Department of Health and Human Services ("HHS") to produce documents and testimony in response to a subpoena issued to HHS by DTCA.

DTCA first urges the Court to reconsider its holding that HHS is not a "person" subject to subpoena under Rule 45 of the Federal Rules of Civil Procedure, in light of the Court of Appeals' subsequent decision in *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. June 16, 2006). *Yousuf* held that a federal agency is a "person" for the purposes of Rule 45 and thus subject to a motion to compel under that Rule, including in cases where the United States is not a party. The Court therefore GRANTS the Motion to Amend its Opinion to reflect that an agency of the United States is a "person" for the purposes of Rule 45.[2]

---

[2]The Court also amends its Opinion to withdraw its statement that the United States "is not a real party in interest when, as in this case, it has elected not to intervene." Mem. Op. [1167] at 14; *United States ex rel. Pogue v. Diabetes Treatment Centers of America*, 235 F.R.D. 521, 528 (D.D.C. June 2, 2006). That statement is contradicted by this Court's statements in *United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F.Supp. 2d 114, 119-20 (D.D.C. 2003) (Lamberth, J.), the logic of the D.C. Circuit in *Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003), the weight of authority in other circuits, *see, e.g.*, *United States ex rel. Zissler v. Regents of the Univ. of Minnesota*, 154 F.3d 870, 872 (8th Cir. 1998); *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993); *United State ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*, 961 F.2d 46, 50 (4th Cir. 1992), and the fact that the United States has asserted throughout this case that it is a real party in interest. As these authorities reflect, the United States can be considered a real party in interest in an FCA action in which it does not intervene because, *inter alia*, the United States stands to gain the lion's share of any recovery, can participate significantly in the litigation despite not intervening, and will potentially be subject to the res judicata effect of any judgment, and because it is the United States' interest that provides standing in the case in the first place. To say that the United States is a real party in interest, however, does not make it the equivalent of a party to the suit, as discussed *infra*.

At the same time, *Yousuf* explicitly recognized, and did nothing to displace, the applicability of each agency's *Touhy* regime for handling requests for information, including subpoenas.[3]  *See In re Subpoenas in SEC v. Selden*, 445 F.Supp. 2d 11 & nn. 6, 7 (D.D.C. Aug. 16, 2006) (Urbina, J.); *Santini v. Herman*, 456 F.Supp. 2d 69, 71-72 (D.D.C. Oct. 17, 2006) (Collyer, J.).  The need to go through the *Touhy* process is especially important in this case, since HHS has engaged in discussions with DTCA during the pendency of these motions and has begun producing some documents.  It is also apparent that the scope of DTCA's requests for documents may have changed as a result of these discussions, and that its request for testimony may have dropped out of the picture all together.

As such, the sound approach is for DTCA to determine what requests remain unmet and submit them to HHS in the form of a subpoena in compliance with the agency's *Touhy* regulations.  The Motion to Compel is GRANTED, insofar as the Court expects HHS to process the subpoena with dispatch.  When HHS has completed this process, DTCA may seek review of this final agency action through a motion to compel further compliance.  At that point the other objections that HHS has previously raised to DTCA's requests – to their scope and nature, etc. – can be addressed to the extent they are raised again, and the Court can compel further compliance with the subpoena if necessary.

## III.    Expert Motions

Next, the Court addresses the United States' Motion [103] to Strike the Expert Report of Eric Yospe, Relator's Motion [104] to Strike the Report and Designation of DTCA Expert

---

[3]This refers to the regulations federal agencies may adopt, pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), to prescribe specific procedures for responding to requests for information or testimony.  *See infra*.

Witness Eric Yospe, and Relator's Motion [1174] to Seal Rule 26 Expert Report of Eric Yospe. As explained below, the Motions are DENIED.

Eric Yospe was employed at the Health Care Financing Administration, a part of HHS, from 1972 to 1996, including tenures as Chief of the Audit and Reimbursement Branch and as the Director of Audit and Civil Monetary Penalties. In his Expert Disclosure, filed pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Yospe states that he has been retained by DTCA to provide expert opinions, and that if called to testify he would opine on the Medicare cost reporting process in place during the years 1986 to 1996 and on "the impact that a Medicare cost report claim for certain of the fees DTCA charges to its hospital clients has on Medicare payments through the cost reporting process." *See* Docket # 103. The rest of the report outlines Yospe's opinions. The United States and relator move to strike his expert disclosure report for failure to comply with HHS' *Touhy* regulations, 45 C.F.R. §§ 2.1-2.6. Relator also seeks to strike his designation as an expert.

Under Federal Rule of Civil Procedure 12(f) a court may strike all or part of a pleading for insufficiency, redundancy, immateriality, impertinence, or scandalousness. *See* Fed. R. Civ. P. 12(f).[4] *Judicial Watch, Inc. v. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004). These motions are strongly disfavored, and the decision of whether to strike all or part of a pleading or attachment thereto rests within the sound discretion of the court. *See Judicial Watch*, 224 F.R.D. at 263 (collecting authorities); 2-12 Moore's Federal Practice – Civil § 12.37 (2006).

---

[4]Under this Rule, "pleading" includes affidavits and other materials in support of technical pleadings. *See Larouche v. Dep't of the Treasury*, 2000 U.S. Dist. LEXIS 5078 at *39-40 (D.D.C. Mar. 31, 2000); citing *Humane Soc'y of the United States v. Babbitt*, 46 F.3d 93, 97 n.5 (D.C. Cir. 1995).

A "motion to strike is considered an exceptional remedy and is generally disfavored," *Larouche v. Dep't of the Treasury*, 2000 U.S. Dist. LEXIS 5078 at *40 (D.D.C. Mar. 31, 2000) (citing Moore's at § 12.37[1]), and the proponent of such a motion must carry a "formidable burden." *Judicial Watch*, 224 F.R.D. at 264.

Under the federal "Housekeeping Statute," 5 U.S.C. § 301, a federal agency may adopt procedures – dubbed *Touhy* regulations after the Supreme Court decision *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) – for responding to subpoenas and other requests for testimony or documents.  According to the *Touhy* regulations adopted by HHS, "[n]o employee or former employee" of HHS "may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the person's official relationship with the Department unless authorized by the Agency head" pursuant to the process set forth in the *Touhy* regulations, and upon the Agency head's determination "that compliance with the request would promote the objectives of the Department." 45 C.F.R. § 2.3.  These regulations do not apply to civil proceedings where the United States, HHS, or any other federal agency is a party.  45 C.F.R. § 2.1(d)(1).

The valid *Touhy* regulations adopted by HHS require that a party first seek agency approval before attempting to secure the testimony of a current or former agency employee.  *See, e.g., In the Matter of a Subpoena Issued to Thomas A. Scully*, 2006 U.S. Dist. LEXIS 38780, 06-cv-77 (D.D.C. Apr. 11, 2006) (Kessler, J.).  After exhausting agency remedies, the party may then seek judicial review of the agency decision via an Administrative Procedure Act action.  *See id.*; *In re: Subpoena Duces Tecum to Tommy G. Thompson*, 2005 U.S. Dist. LEXIS 41202, 04-

cv-498 (D.D.C. 2005) (Kollar-Kotelly, J.).  These rules apply here.[5]

DTCA initially designated Yospe as an expert and filed his Rule 26 disclosure without seeking HHS approval through the *Touhy* process.  While these motions were pending, DTCA sought and received HHS approval to call Yospe as an expert, subject to certain conditions, and HHS approved an expert report for Yospe, also subject to conditions.  If DTCA is unhappy with the scope of testimony that HHS has approved going forward, it can exhaust administrative remedies and seek review of the agency decision in accord with the APA.  Any complaints by relator and the United States regarding *Touhy* compliance should thus be alleviated.

As to the motions to strike, no proper basis for granting them has been shown.  It appears that the purpose of the motions, particularly the motion to strike Yospe's expert designation, was to prevent Yospe from testifying at all.  If Yospe had attempted to testify, in person, by affidavit, or otherwise, a motion to strike or in limine may have been a proper vehicle for HHS to ensure that he did not purport to pronounce official policy on behalf of the agency, discuss matters over which the agency asserts a privilege, and to otherwise safeguard the governmental interests that *Touhy* regulations serve to protect.  However, there is no authority indicating that HHS can block *all* testimony by a *former* employee as to that individual's personal opinions and observations, absent the assertion of a specific privilege.  *See, e.g., Carter v. Mississippi Department of*

_____

[5]The HHS *Touhy* regulations do not apply in "[a]ny civil or criminal proceedings" where the United States or an agency thereof "is a party."  45 C.F.R. § 2.1(d)(1).  For the purposes of these regulations, the United States is not a party to a *qui tam* action in which it has declined to intervene.  While the Court has held that the United States is one of the real parties in interest to a declined FCA case, this is not the same as declaring it a party to the action in all senses.  If the United States was treated as a party in all respects for every FCA case in which it has declined to intervene and take control of the litigation, there would be little substance to the declination option provided by the FCA.

*Corrections*, 1996 WL 407241, 88-cv-213 (N.D. Miss. May 24, 1996) (adoption of *Touhy*

regulations does not create absolute privilege for agency to withhold information from court).  At

any rate, DTCA's *Touhy* compliance moots these concerns.  The motions to strike the report and

expert designation are denied insofar as they sought to block Yospe from testifying.

 To the extent they seek to strike the original expert report, the motions to strike are infirm

for other reasons, in addition to being moot.  First and foremost, the Rule 26(a)(2) expert

disclosure is neither testimony nor a pleading, and therefore could not properly be stricken under

Rule 12(f).  For that matter, the report was in no position to be stricken at all, since it was only

placed on the docket by the United States when it moved to strike.  While relator also raised

objections to the admissibility of certain sections of the report, his remedy is to raise those

objections to specific questions or testimony if and when Yospe testifies, not in a motion to strike

the entire expert report.  An expert report is not meant to be admissible as evidence and need not

be to pass muster.  Of course, as it would in any case, the Court will disregard any improper

materials when ruling on the merits – such as statements in the report that purport to pronounce

policy positions on behalf of HHS, without obtaining HHS' approval.

 To avoid confusion between this expert report and the one that has passed through the

HHS *Touhy* process, or between this report and any future affidavit or other exhibit furnished by

Mr. Yospe, the Court admonishes relator, the United States, and DTCA not to incorporate by

reference any portions of the original Yospe expert report or to otherwise refer to the original

Yospe report in deposition or other testimony or in court filings.  Rather, the parties and the

United States should move forward on the basis of the current report as approved by HHS.

 The motion to seal the report is denied, as relator has identified no basis for such action.

8

To the extent that any privileges apply to the report, they belong to the United States, which has not claimed any need to seal the report and, indeed, placed it on the record in the first place.

**IV.     Motion to Amend Scheduling Order**

DTCA lodged a Motion [1201] to amend the scheduling order to allow it additional time to move for summary judgment, so that it could rely on the deposition of Eric Yospe in its motion.  While relator is correct that DTCA could have facilitated a smoother, quicker resolution of the issues surrounding Yospe's testimony by submitting him to HHS's *Touhy* process early on, DTCA is not entirely at fault for the delay.  The Motion [1201] is GRANTED, and the parties shall include deadlines for summary judgment motions among the matters to be discussed when they meet and confer, as ordered above.

**V.     Judgment on the Pleadings**

**A.     Background**

Defendant argues that it is entitled to judgment on the pleadings as to certain of relator's claims because they are time barred.  Relator filed his Complaint on June 23, 1994, and the United States declined intervention on February 6, 1995.  Relator alleged the claims at issue were submitted for payment from 1984 until May 20, 1996, and that he was employed by DTCA "[f]rom about December 1991 to February 28, 1994."  4AC ¶ 6.  Presumably, the earliest date on which he could have gained knowledge of DTCA's false claims was the start of his employment.

The False Claims Act contains its own statute of limitations:

"(b) A civil action under section 3730 may not be brought –
(1) more than 6 years after the date on which the violation of section 3729 is committed, or

> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last."

31 U.S.C. §3731(b) (2006).

Subsection (b)(2) was added to the statute in 1986, as part of a package of comprehensive amendments to the FCA.

DTCA contends that in a case such as this, where the United States does not intervene, the relator is entitled only to the six-year statute of limitations described in § 3731(b)(1). DTCA argues that § 3731(b)(2)'s reference to "the official of the United States charged with responsibility to act in the circumstances," coupled with its lack of any explicit reference to a *qui tam* relator, mean that the section can apply only to the United States. Relator argues that the ten-year statute of repose does apply to relators, and that the three-year tolling provision should be measured from the time the government learns or should learn of the false claims. A handful of courts have addressed the proper interpretation of the False Claims Act's statute of limitations, and have divided into three different schools of interpretation.

**B.     Three Interpretations of § 3731(b)**

**1.     *Hyatt*: Relators Benefit From Tolling, Measured By Their Knowledge**

The first school of thought was adopted by the Ninth Circuit in *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir. 1996), which held that § 3731(b)(2) applies to *qui tam* plaintiffs and "the limitations period runs from the date the plaintiff knew or reasonably should have known of the facts material to the right of action." *Id.* at 1213. Because the language of §

3731(b) applies to any kind of action "under section 3730," which includes suits brought by relators, the court reasoned that all of subsection (b) must be interpreted as applying to both the government and relators.  The court then reviewed the legislative history, noting that both the House and Senate Committee reports referred only to the benefit to the government in explaining the reason for adding the tolling provision.  *Id.* at 1214.  But, as the court pointed out, this did not mean that Congress intended for the tolling provision to apply only to the United States, since several other parts of the FCA and its legislative history use the words "government" or "United States" to apply equally to the United States and private *qui tam* relators.  *Id.* at 1214-15.  Having concluded, in a backwards fashion, that the legislative history was ambiguous while the statutory language was clear, the court ruled that the tolling provision applies to relators.

It then turned to the question of "what event initiates the running of the statute of limitations against a *qui tam* plaintiff."  *Id.* at 1215.  Instead of taking the statute at face value, the court assumed that, since a *qui tam* relator stands in the shoes of the government, the relator should be treated as the "official of the United States" for purposes of (b)(2), and thus the event that starts the statute of limitations running is the relator's knowledge.  *Id.* at 1218 & n.8.  In doing so, the court rejected the relator's argument that the relevant event was when the *government* gained knowledge of the facts material to the right of action.  As the court noted, this "would permit *qui tam* relators to control the length of their own limitations period by withholding their allegations until they are prepared to sue," which would be inconsistent with the general purposes of a statute of limitations and would not facilitate prompt action in false claims cases.  *Id.* at 1218.  Because the relator in *Hyatt* filed suit more than three years after the last date on which he possibly could have been made aware of the claims, his claims were barred.

11

The Ninth Circuit has continued to follow *Hyatt*. *See United States ex rel. Saaf v. Lehman Brothers*, 123 F.3d 1307 (9th Cir. 1997). The Third Circuit has followed *Hyatt*, but in an unpublished opinion and with no explanation of its reasons. *United States ex rel. Malloy v. Telephonics Corp*., 68 Fed. Appx. 270, 273 (3rd Cir. 2003). A number of District Courts have adopted the result and rationale of *Hyatt*. *See, e.g.*, *United States ex rel. Downy v. Corning, Inc.*, 118 F.Supp. 2d 1160 (D. N.M. 2000); *United States ex rel. Bidani v. Lewis*, 1999 WL 163053, 97-cv-6502 (N.D. Ill. 1999).

## 2.   *Colunga*: Relators Benefit From Tolling, Measured By Government's Knowledge

A second school of thought has been much discussed but rarely followed: it asserts that relators are entitled to the ten-year outer limit of § 3731(b)(2), and that the clock on tolling does not begin to run until the government knows or should know about the right of action, which in many cases will not occur until a relator has filed suit. This line of thinking was articulated in the unpublished opinion of *United States ex rel. Colunga v. Hercules Inc.*, 1998 WL 310481, 1998 U.S. Dist. LEXIS 21811, No. 89-cv-954B (D. Utah Mar. 6, 1998). That case reasoned that nothing in § 3731(b) purports to exclude relators, so the (b)(2) tolling provision must be available to them. Since the statute mentions only one "trigger" for the running of the tolling period – the knowledge of the government official – then that must be the trigger when the statute applies to relators acting alone.

*Colunga* has been criticized by nearly every court to consider it and has been disavowed by the Tenth Circuit in a case discussed more fully *infra*. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702 (10th Cir. Dec. 5, 2006); *see also United*

*States ex rel. Koch v. Koch Industries, Inc.*, 188 F.R.D. 617 (N.D. Okla. 1999) (holding that §

3731(b)(2) either does not apply to relators or does apply to them and is measured by their own

knowledge, and explicitly rejecting *Colunga* approach).  Few cases have adopted the same

interpretation as *Colunga*, and they have done so with little or no explanation.  *See, e.g., United

States ex rel. Salmeron v. Enterprise Recovery Systems, Inc.*, 2006 WL 3445579, 05-cv-4453

(N.D. Ill. Nov. 30, 2006); *United States ex rel. Kreindler & Kreindler v. United Technologies

Corp.*, 777 F.Supp. 195 (N.D.N.Y. 1991).

### 3.       *El Amin***: Tolling Does Not Apply To Relators**

Under the third school of thought, the second subsection of § 3731(b), by referring to an

"official of the United States" and not to *qui tam* relators, must be interpreted as implicitly

excluding relators in cases where the government does not intervene.  Under this theory, both

relators and the government are normally bound by the six-year limitations period of §

3731(b)(1).  But as to the government, and the government only, in cases of fraudulent

concealment, the three-year tolling provision of (b)(2) applies.

The cases most frequently cited for the development of this interpretation are *United

States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 6 F.Supp. 2d 263 (S.D.N.Y.

1998) and *United States ex rel. El Amin v. George Washington University*, 26 F. Supp. 2d 162

(D.D.C. 1998) (Flannery, J.).  In *El Amin* the defendant sought to bar relators from proceeding on

alleged false claims that were submitted more than six years before the complaint was filed.  The

relators were arguing for the *Colunga* approach because, while they were still within the ten-year

window of the statute of repose,  more than three years had passed since they gained knowledge

of the allegedly false claims.  With little comment or analysis, Judge Flannery rejected relators'

argument, "which confuses theories and tries to embark on an illogical path between the two dominant approaches adopted by federal courts." *Id*. at 172.

In unpublished opinions, a few appeals courts have followed *El Amin* and rejected the *Colunga* approach, and have stated in dicta that § 3731(b)(2) does not apply to *qui tam* relators at all. For instance, *Colunga* was recently overruled by the Tenth Circuit in *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 2006 WL 3491784 (10th Cir. Dec. 5, 2006). The Tenth Circuit, clearly concerned that extension of the tolling provision would allow relators to sit back and pile up claims, opined that § 3731(b)(2) "was not intended to apply to private qui tam relators at all." *Id.* at 725.

A number of District Courts have followed *El Amin* in holding that the six-year statute of limitations applies to all *qui tam* actions where the government declines intervention, or in other words, that (b)(2) applies only to the government. *See, e.g., United States ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479 (S.D.N.Y. 2006); *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 2006 WL 2583257, 06-cv-11848 (E.D. Mich. Sept. 7, 2006); *United States ex rel. Vosika v. Starkey Labs. Inc.*, 2004 U.S. Dist. LEXIS 18349, 01-cv-709 (D. Minn. 2004).

It has been said that the Sixth Circuit adopted the *El Amin* approach by implication. *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 2006 WL 2583257 at *4, 06-cv-11848 (E.D. Mich. Sept. 7, 2006) (citing *Sanderson v. HCA*, 447 F.3d 873, 879 (6th Cir. May 12, 2006)). *Sanderson* did no such thing. The Sixth Circuit simply stated that, as one of several alternative grounds for dismissing a *pro se* FCA complaint by a *qui tam* relator, the district court was correct in ruling that the claims were outside the six-year statute of limitations. A careful reading of *Sanderson* shows that the claims were brought more than 11 years after the relator's

employment by the defendant ended, which was the latest date on which he could have learned

the facts material to his right of action.  Thus the relator not only failed to bring suit within three

years of learning of his claim, but also had exceeded the ten-year statue of repose.  The relator

thus was not entitled to the application of § 3731(b)(2), and was bound by the six-year limitations

period of § 3731(b)(1).[6]  The D.C. Circuit has not ruled on the matter, and it appears that only

one other judge in this District has considered the issue, following *El Amin* with no discussion.

*United States ex rel. Fisher v. Network Software Assocs., Inc.*, 180 F.Supp. 2d 192, 194 (D.D.C.

2002) (Friedman, J.).

### C.       Analysis

#### 1.       Statutory Language

Statutory interpretation begins, and, where possible, ends with the statute's language.

Subsection (b) of § 3731 states that it applies to "[a] civil action under section 3730," which

describes actions that are brought both by the United States and by relators.  Because the major

clause of § 3731(b) does not differentiate between these actions, it applies to both.  Any

exclusionary language therefore must be found in the subordinate clauses, if anywhere.

Subsection (b)(2) does not contain any negative words or words of exclusion, other than

---

[6]Similarly, it could be argued that the Eleventh Circuit implicitly adopted the *El Amin* interpretation in the unpublished opinion of *Foster v. Savannah Communication*, 140 Fed. Appx. 905 (11th Cir. 2005).  In that case the Eleventh Circuit applied the six-year limitations period to a relator in a declined case.  In doing so it followed, without analysis, the opinion of the District Court, which followed, without analysis, the recommendations of a magistrate, who cited, without analysis, to *El Amin*.  Moreover, the *pro se* relator had failed to follow any of the procedures for filing the "baseless, if not verbally impenetrable" complaint on the government, so in reality the government never had the option of intervening.  *See Foster v. United States Army, Third Infantry Div.*, 03-cv-148 (Docket #55 p. 2) (S.D. Ga. Dec. 22, 2003).  *Foster* is too unique a case to be considered remotely persuasive.

saying that "in no event" may an action be brought outside the ten-year statute of repose.  Thus

the language of § 3731(b) includes relators, and the language of (b)(2) does not exclude them.

Courts that follow the *El Amin* approach interpret the reference to an "official of the United

States" to implicitly exclude relators.  But there are countless ways for Congress to have

*explicitly* excluded relators, any of which would have been clearer and more grammatically

appealing.  For instance, if (b)(2) is meant to apply only to the government, it would logically

begin with a simple clause such as "in cases where the United States brings the action or elects to

intervene," or the even simpler and equally elegant "as to the United States."

That relators are included within the scope of § 3731(b)(2)'s tolling provision is

supported not only by the words Congress used – and did not use – but also by the structure of §

3731(b), which shows that both of its subsections are meant to apply equally to relators and the

United States.  As noted, subsection (b) opens by including all FCA plaintiffs, and closes with

the clause "whichever occurs last," indicating that (b)(1) and (b)(2) are to be read together.  This

final, "whichever occurs last," clause stands alone, much like the opening line of § 3731(b).  If

subsection (b)(2) applies only to the United States – meaning that only the six-year period can

apply to relators in declined cases – then the need to pick "whichever occurs last" also applies

only to (b)(2), and should appear only as part of that clause.  Better yet, the statute of limitations

for relators would have been expressed in a separate, stand-alone subsection.

The statute is equally unambiguous about subsection (b)(2)'s application to relators.  No

FCA action may be brought – by anyone – "more than 3 years after the date when facts material

to the right of action are known or reasonably should have been known by the official of the

United States charged with responsibility to act in the circumstances, but in no event more than

10 years after the date on which the violation is committed." 31 U.S.C. §3731(b)(2). The statute

does not purport to apply in any other way. The *Colunga* approach is exactly right: the statute

says what it says, and it says that (b)(2)'s three-year statute of limitations applies across the

board, measured by the government's knowledge.

It is true that in other sections the FCA uses "United States" to refer both to the

government and relators. But in this instance, § 3731(b)(2) did not use a generic, careless label.

It instead used a very specific phrase that does not occur elsewhere in the Act: "the official of the

United States charged with responsibility to act in the circumstances." These precise words must

be given their precise meaning. Just as Congress easily could have found the words to exclude

relators from subsection (b)(2) all together, so too could it have found words that would measure

the statute of limitations in (b)(2) by the relator's knowledge. Three little words come to mind

that would do the trick: "*the relator or* the official of the United States."

The Court thus holds that § 3731(b)(2) unambiguously applies to relators and that the

three-year statute of limitations is to be measured, as the statute says, from the date the relevant

government official knows or should know of the facts relevant to the cause of action.

### 2.    Legislative History

Having determined that the statute is unambiguous, no further inquiry is appropriate. The

other cases to consider this issue have asserted that the plain words of § 3731(b) are somehow

ambiguous, then turned to legislative history and congressional intent in an effort to give those

words different meaning. But the legislative history and congressional intent are perfectly

harmonious with the words used by Congress, which the Court today gives their plain effect.

The Senate Report on the 1986 FCA amendments, which added subsection (b)(2) to §

3731, observed that the new provision would:

> permit the Government to bring an action within 6 years of when the false claim is submitted (current standard) or within 3 years of when the Government learned of a violation, whichever is later. . . . [S]uch tolling is necessary to ensure the Government's rights are not lost through a wrongdoer's successful deception.

S. Rep. No. 345, 99th Cong., 2d Sess., 15 (July 28, 1986), reprinted in 1986 U.S.C.C.A.N. 5266.

The Senate Report also commented that the new subsection (b)(2):

> would include an explicit tolling provision on the statute of limitations under the False Claims Act.  The statute of limitations does not begin to run until the material facts are known by an official within the Department of Justice with the authority to act in the circumstances.

*Id*. at 30.

Similarly, the House Report stated that the new provision of (b)(2):

> expands the statute of limitations in the False Claims Act.  Under current law, the statute of limitations is to be not more than six years after the date of the occurrence of the violation. [The amendment] provides that the statute of limitations shall be not more than six years (as provided by current law), nor more than three years after the date when the material facts of the violation are known or should have been known by the official of the United States with responsibility to act, but no action may be brought more than 10 years after the occurrence of the violation.
>
> It was brought to the attention of the Committee that fraud is often difficult to detect and the statute of limitations should not preclude the Government from bringing a cause of action under this Act if they were not aware of the fraud.  The Committee agreed that this was unfair and so expanded the statute of limitations.  However, the Committee did not intend to allow the Government to bring fraud actions *ad infintum* [sic], and therefore imposed the strict 10 year limit on False Claims Act cases.

H. Rep. No. 660, 99th Cong., 2d Sess., 25 (June 26, 1986).

Cases that follow *El Amin* in excluding relators from subsection (b)(2) emphasize that these bits of legislative history refer only to the government's interests and do not mention relators.  This is both unsurprising and uninstructive.  The Senate Report's focus on "the Government's rights" is unsurprising for a statutory scheme that is focused predominantly on the

rights of and benefits to the government, and that provides rights and benefits to relators only as afterthoughts meant to facilitate *qui tam* actions that secure recoveries for the government. That Congress neglected to mention relators in this portion of the legislative history is also uninstructive, since it clearly included relators in the statutory text. A failure to address relators in Committee Reports, one way or another, cannot undo the clear language of a statute.

To the contrary, these items of legislative history indicate that Congress did indeed mean what it said when it instructed that the three-year limitations period was to be measured from the standpoint of the government's knowledge, not the relator's. The Senate Report focuses on "ensur[ing] the Government's rights are not lost" and pegs the limitations period to the knowledge of "an official within the Department of Justice with the authority to act in the circumstances," while the House Report speaks of "the official of the United States with responsibility to act." Both reports talk in specific terms about the knowledge of government officials – the Senate Report was even more specific than the actual statute – and do not reveal any intent to allow the limitations period to be based on someone else's knowledge.

The focus in the legislative history on preserving the government's rights – with no mention of the relator's – shows, if anything, a desire to ensure that the government's rights are not impaired by the conduct of some other person, whether it be a private individual or a government official who obtains information related to a claim, but does not have the authority or responsibility for bringing suit. If the relator's knowledge was relevant to the statute of limitations, then the government could conceivably find itself time-barred when it intervenes in a *qui tam* case in which a relator waited more than three years to bring suit. The alternative, which is to argue that the government would only be bound by its own knowledge in cases where it

intervenes, is unworkable in practice, because it would allow the government to change the applicable limitations period by deciding to intervene.  Such an unusual outcome would have to find explicit support in the text, and does not.

In addition, the *Hyatt* school of cases claims that (b)(2)'s reference to an "official of the United States" must implicitly include relators, because the relator stands in the shoes of the government, and because other parts of the legislative history, and indeed, other parts of the FCA, use "government" or "United States" in a careless, shorthand manner that refers both to the government and to relators.  *See, e.g., Hyatt*, 91 F.3d 1211, 1214-15 (analyzing legislative history); *United States ex rel. Bidani v. Lewis*, 1999 WL 163053 at *4-9, 97-cv-6502 (N.D. Ill. 1999) (same).  As far as legislative history goes, the House and Senate Reports may have used the words "government" and "United States" loosely, but they used the very specific "official within the Department of Justice with the authority to act in the circumstances" and "official of the United States with responsibility to act" when describing the person whose knowledge matters.  Further, the Court cannot warp a statute's plain language merely to make sense out of the legislative history.  On the more important point of the statutory text, it is true that some FCA sections have been interpreted as using "United States" to refer both to the government and to relators.  *See, e.g.,* 31 U.S.C. § 3731(c).  But, as has been pointed out, § 3731(b)(2) uses a much more specific phrase that can and will be given its plain, specific meaning.

### 3.    Purposes of the FCA

Courts that have considered this issue all seem to founder on the same point: they believe that the purposes of the False Claims Act are not best served by the plain meaning of § 3731(b), as adopted today by the Court.  So they declare the statute ambiguous, put their own gloss on

innocuous parts of the legislative history, and ultimately justify their interpretation on the grounds that it and it alone best serves the overall legislative purpose.  This is not good statutory construction and it is not necessary, since the statute of limitations makes good sense as written.

The False Claims Act seeks, first and foremost, to detect, punish, and deter the submission of false claims, while seeking to restore funds to the federal fisc.  The *qui tam* provisions enlist private individuals, often motivated largely by self-interest, to report and prosecute alleged false claims.  Those provisions seek to strike a balance between the interests of the government and the self-interest of relators.  The statute of limitations, as interpreted by the Court, advances those governmental interests.

Excluding relators from § 3731(b)(2) all together does little to further the FCA's objectives.  If the addition of the fraudulent concealment provision of (b)(2) increases the government's ability to punish, deter, and recover upon false claims, then including relators in that provision increases the government's ability to do these things even more.  In almost all cases involving a relator, the government will acquire knowledge only after a relator does, usually when the relator approaches the government or serves its complaint under seal. Measuring (b)(2)'s limitations period by the government's knowledge, and never the relator's, makes sense because it means that (1) the government's rights will never be impaired by the relator's conduct; and (2) the government will be able to recover upon the maximum amount of claims within the overall ten-year repose period.

There are good reasons to allow a relator the benefit of § 3731(b)(2) without imposing on him the burden of that subsection's knowledge requirement.  As *Colunga* pointed out in some detail, a would-be relator, unlike the kind of government official identified by the statute, is

21

under no obligation to act upon learning of facts material to an FCA claim.  *Colunga* at *4-5.

For many reasons – lack of sophistication, the complexity of many false claims schemes, fear of

retribution by an employer, inability to find and retain adequate counsel, or even the simple fact

that the would-be relator is *not* obligated to do so – the relator may fail to bring suit within three

years of learning facts that would put a "reasonable relator" – whatever that is – on notice that

she has a False Claims action on her hands.  All of these are conceivable and perhaps excusable

reasons for a relator to fail to bring a suit within three years, but they do not compel the

conclusion that the government should not be able to benefit from a recovery once a suit is

brought.  In such cases, there is no reason to think that Congress would want to prevent

recoveries in FCA cases, regardless of intervention.

The cases that reject this Court's interpretation of § 3731(b)(2) most frequently cite one

concern as the moving force behind their decisions: that would-be relators will "sleep on their

rights," sit back, and watch false claims build up, perhaps all the way to the ten-year limit.  In

doing so, they will risk overshooting the three-year tolling limit and thus impairing the

government's rights, and in any event will allow the government to keep paying out false claims,

upon which it may never recover.  These concerns are overplayed.  A potential relator has no

rights on which to sleep – if he chooses to let claims build up instead of taking early action, he

may find that his recovery is reduced by the FCA's original source provision, or foreclosed all

together by the fact that the government or a more diligent would-be relator brings suit first.  This

hypothetical scenario is too implausible to provide a justification for tweaking the

straightforward words of a statute.

In addition, the Court's interpretation avoids vexing scenarios that would be produced

22

under either alternative interpretation.  For instance, if § 3731(b)(2) does not apply in any case where a *qui tam* relator proceeds alone, then the government gets to decide what the statute of limitations will be: six years under § 3731(b)(1) if the government declines to intervene, or as much as ten years under § 3731(b)(2) if the government intervenes and tolling applies.  Not only would the government be able to increase the defendant's exposure by deciding to intervene at the outset, it could also do so after the litigation has advanced significantly, since the government retains the right to intervene out of time upon a showing of good cause.  These outcomes are antithetical to the purposes of statutes of limitations and repose, which seek in part to afford some measure of predictability and finality to litigation.

As discussed *supra*, there are similar problems under the *Hyatt* approach: if tolling is based on the relator's knowledge, then conceivably a late-filing relator could cut off the government's rights.  This is completely contrary to the FCA's purpose of facilitating recovery by the government.  It does not help to argue that the government would only be bound by its own knowledge.  This would create the flipside of the problem discussed above: if relators and the government are only bound by their own knowledge, then the government could expand the statute of limitations by intervening in a *qui tam* case.  Any of these scenarios would be particularly problematic – not to mention unfair – in cases where the government intervenes as to some but not all claims, or as to some but not all defendants, or against the same defendant in one relator's case but not another's.  The better method is the one set forth by the statute: there is one statute of limitations expressed in § 3731(b)(2) and it applies the same in all cases.

The Court thus holds that in *qui tam* actions where the United States does not intervene, the same statute of limitations applies as would apply in any other False Claims Act case: (1) six

years from the date of the violation; or (2) three years from the from the date when facts material

to the right of action are or should be known to the relevant government official, whichever

occurs last; but (3) in no event more than ten years after the violation is committed.  Relator filed

his suit on June 23, 1994.  The statute of limitations is an affirmative defense, and DTCA has not

pointed to any facts in the record indicating that an official of the United States with

responsibility for bringing suit in this matter had knowledge of the right of action more than three

years prior to the date Pogue filed suit.  Relator is thus entitled to the three-year statute of

limitations of § 3731(b)(2) and is entitled to go forward with his claims, provided that none are

for violations that occurred more than ten years prior to the date he filed suit.  Defendant's

motion is therefore denied as to claims for violations that occurred on or after June 23, 1984, and

granted for claims for violations that occurred before that date.[7]

## CONCLUSION

For the foregoing reasons, the following motions are GRANTED: United States' Motion

[111] to File Surreply; DTCA's Motion [113] to File Response Brief; United States' Motion

[116] for Extension of Time; Relator's Motion [1190] for Extension of Time; DTCA's Motion

[1197] for Leave to File Supplemental Briefs; DTCA's Motion [1201] for Leave to Amend

Scheduling Order; and Relator's Motion [125] for Leave to File Surreply.  The Relator's Motion

[126] for Leave to File Opposition to Summary Judgment is DENIED.  The Joint Motion [1140]

---

[7]Neither party addressed the applicability of the tolling provision to violations that occurred before the 1986 amendments are passed.  The Court holds that the ten-year statute of repose adopted by the 1986 amendments applies to violations that occurred prior to enactment of the amendments.  The Court would rule differently if these had been moribund claims that were revived by the amendments.  But in this case the amendments did not act to create new rights or extend liability to new conduct.

for Leave to Amend Scheduling Order is DENIED.  The United States' Motion [103] to Strike

Expert Report of Eric Yospe, the Relator's Motion [104] to Strike Report and Designation of

Eric Yospe, and the Relator's Motion [1174] to Seal Expert Report of Eric Yospe are all

DENIED.

The Motion [110] to Dismiss All Claims Against the Defendant Atlanta Physicians is

GRANTED.  The case against defendants Paul C. Davidson, M.D.; Bruce W. Bode, M.D.;

Judson G. Black, M.D.; Robert Dennis Steed, M.D.; and Anthony E. Karpas, M.D. is

DISMISSED WITH PREJUDICE as to relator A. Scott Pogue and WITHOUT PREJUDICE as

to the United States.

The Motion [106] to Reconsider is GRANTED.  DTCA's Motion [118] for Judgment on

the Pleadings is DENIED in part and GRANTED in part.  The Court will ENTER JUDGMENT

in favor of DTCA and against relator on all claims for violations of the False Claims Act that

occurred before June 23, 1984, and will DISMISS the Complaint WITH PREJUDICE to the

Relator as to those claims.  The parties are also ORDERED to meet and confer within 30 days of

this date and submit to the Court a proposed Scheduling Order addressing all scheduling matters

still outstanding in this case.  A separate ORDER will issue this day.


Signed by United States District Judge Royce C. Lamberth, February 7, 2007.