UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES** *ex rel.* **A. SCOTT** )
**POGUE,**                           )
                                    )
      **Plaintiff**              )
                                    )   Civil Action No. 99-3298 (RCL)
      v.                         )   Part of Misc. No. 01-50 (RCL)
                                    )
**DIABETES TREATMENT CENTERS**       )
**OF AMERICA, Inc.,** *et al.***,**   )
                                    )
      **Defendants.**             )
_____)

## MEMORANDUM OPINION

Now before the court comes relator, A. Scott Pogue's motion [142] for a protective order preventing the deposition of Eric Yospe until the Department of Health and Human Services ("HHS") approves a Rule 26 expert report. Upon full consideration of the motion, defendant's opposition, the reply, the entire record herein, and applicable law, this Court finds that relator's motion will be DENIED.

### I.   BACKGROUND

Diabetes Treatment Centers of America, Inc.'s ("DTCA's") expert witness Eric Yospe was employed at the HHS's Health Care Financing Administration ("HCFA")—now renamed the Centers for Medicare and Medicaid Services ("CMS")—from 1972 until 1996, and served in positions including Chief of the Audit and Reimbursement Branch and Director of Audit and Civil Monetary Penalties. Without first seeking HHS approval, DTCA designated Mr. Yospe as

an expert and filed an expert disclosure outlining his opinions pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. In the Rule 26 report, Mr. Yospe states that he was retained by DTCA to provide expert opinions, including those regarding the Medicare process for acute care hospitals. (Ex. 1 to Docket No. 103 at 1.) Of particular importance to the motion currently before this Court are Mr. Yospe's opinions concerning HHS practices upon discovery of kickback payments. He opines that "[b]ased on my experience as a HCFA audit director, I am aware of no instance in which a cost report was rejected by Medicare for failure to comply with a Medicare statutory or regulatory requirement, such as the Stark or anti-kickback laws." (*Id.* at 14.) Mr. Yospe elaborates by stating that "if an intermediary discovered that a provider may have been in violation of the anti-kickback provisions," the intermediary was expected to report the conduct to the fraud unit or to HHS's Office of the Inspector General ("OIG") but that Mr. Yospe was "aware of no instance during [his] tenure where the OIG intervened and prevented final payment to the provider." (*Id.* at 14–15). According to Mr. Yospe, when intermediaries became aware of apparent kickbacks, rather than invalidating given cost reports, they continued to pay claims and simply subtracted the amount of the apparent kickbacks from the allowed provider payments. (*Id.* at 15). Additionally, Mr. Yospe claims that "[a] provider's violation of the anti-kickback or Stark law does not automatically make that provider ineligible for Medicare reimbursement." (*Id.*)

On July 13, 2006—after the Rule 26 report had been filed—DTCA submitted a request to CMS for approval of Mr. Yospe's testimony pursuant to HHS's applicable *Touhy* regulations, 45 C.F.R. Part 2. (*See* Ltr. to McClellan, Ex. 11 to Mot. for Protective Order.) The letter described the nature of Mr. Yospe's intended testimony and included a copy of the Rule 26 expert

disclosure discussed above. CMS responded by stating that although it did not approve of "Mr. Yospe's earlier testimony (by deposition, expert report, or otherwise)" because of his failure to have first sought approval under HHS regulations, CMS nevertheless approved "on a prospective basis" the request to permit Mr. Yospe's testimony regarding his knowledge of the payment of Medicare claims from 1986 to 1996 subject to several conditions. (*See* Ltr. to Hays-Sasser, Ex. 7 to Mot. for Protective Order.) One condition was that Mr. Yospe could not testify to matters not specifically described in the request for testimony without submitting an additional request and receiving approval for that testimony. (*Id.*)

Relator Mr. Pogue now objects to the deposition of Mr. Yospe and moves for a protective order claiming that DTCA never submitted a Rule 26 report that was pre-approved by HHS pursuant to the applicable *Touhy* regulations. Relator asserts that the submitted Rule 26 report—the only report ever submitted— is insufficient for two reasons: (1) it was never approved (pre-approved or otherwise) by HHS, and (2) this Court, in its Februrary 7, 2007 memorandum opinion, expressly prohibited the parties from referring to that original report in future testimony or court filings. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 474 F. Supp. 2d 75, 81 (D.D.C. 2007) (Lamberth, J.). DTCA responds citing CMS's prospective approval of Mr. Yospe's testimony and states that this Court ordered "the parties and the United States [to] move forward on the basis of the current report as approved by HHS." (*Id.*).

## II. ANALYSIS

### A. APPLICABLE LAW

Under the federal "Housekeeping Statute," 5 U.S.C. § 301, a federal agency may adopt procedures—*Touhy* regulations—for responding to subpoenas and other requests for testimony or documents. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). According to HHS *Touhy* regulations, "[n]o employee or former employee of the [HHS] may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the person's official relationship with the Department unless authorized by the Agency head" pursuant to the process set forth in the *Touhy* regulations and upon the Agency head's determination "that compliance with the request would promote the objectives of the Department." 45 C.F.R. § 2.3. These regulations do not apply to civil proceedings where the United States, HHS, or any other federal agency is a party. 45 C.F.R. § 2.1(d)(1).

The *Touhy* regulations adopted by HHS require that a party first seek agency approval before attempting to secure the testimony of a current or former agency employee. *See, e.g., In re Subpoena Issued to Scully*, No. 06-cv-77, 2006 U.S. Dist. LEXIS 38780 (D.D.C. Apr. 11, 2006) (Kessler, J.). After exhausting agency remedies, the party may then seek judicial review of the agency decision via an Administrative Procedure Act action. *See id.*; *In re Subpoena Duces Tecum to Thompson*, No. 04-cv-498, 2005 U.S. Dist. LEXIS 41202 (D.D.C. 2005) (Kollar-Kotelly, J.). These rules apply here.[1]

---

[1] The HHS *Touhy* regulations do not apply in "[a]ny civil or criminal proceedings where the United States" or an agency thereof "is a party." 45 C.F.R. § 2.1(d)(1). For the purposes of these regulations, the United States is not a party to a *qui tam* action in which it has declined to

### B. APPROVED RULE 26 REPORT HAS BEEN FILED

This Court finds that HHS has approved Mr. Yospe's testimony as required by the *Touhy* regulations and consequently the Court finds it proper to deny relator's motion for a protective order. DTCA originally neglected to comply with mandatory HHS *Touhy* regulations when it designated Mr. Yospe as an expert and filed the Rule 26 report without first seeking HHS approval. *See* 45 C.F.R. § 2.3 (requiring prior agency approval for testimony of current and former employees). However, when DTCA later requested HHS approval for Mr. Yospe's testimony, CMS gave its approval of the testimony on a "prospective basis." Because a copy of the Rule 26 report was enclosed with DTCA's request, CMS had full knowledge of Mr. Yospe's opinions as outlined in the report. Additionally, CMS's prospective approval letter offers no indication that CMS expected for DTCA to file a second Rule 26 report for approval, a report that it now seeks. Consequently, this Court deems the Rule 26 report—the only such report thus far filed in this case—approved by HHS for purposes of the *Touhy* regulations. Thus, a report complying with Federal Rule of Civil Procedure 26(a)(2)(B) has already been filed regarding Mr. Yospe's testimony and preventing Mr. Yospe's deposition would be inappropriate.

### C. TESTIMONY REGARDING MATTERS NOT IN RULE 26 REPORT

Relator Mr. Pogue claims that DTCA intends to have Mr. Yospe testify to matters not included in the Rule 26 report. (Reply at 6–8.) Specifically, relator objects to the unfair surprise

---

intervene. While the Court has held that the United States is one of the real parties in interest to a declined False Claims Act ("FCA") case, this is not the same as declaring it a party to the action in all senses. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 474 F. Supp. 2d 75, 78 n.2 (D.D.C. 2007) (Lamberth, J.). If the United States was treated as a party in all respects for every FCA case in which it declines to intervene and take control of the litigation, there would be little substance to the declination option provided by the FCA.

generated by Mr. Yospe's intent to testify that HHS did not view compliance with anti-kickback laws as a condition precedent to the government's decision to pay Medicare claims.

"Under Rule 26(a)(2)(B), a party using an expert witness must disclose a report containing, inter alia, 'a complete statement of all opinions to be expressed and the basis and reasons therefor.' The purpose of the rule is to eliminate unfair surprise to the opposing party." *Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (quoting FED. R. CIV. P. 26(a)(2)(B)). Relator claims that allowing Mr. Yospe's testimony will create precisely the type of ambush that Rule 26 is designed to prevent. *See United States v. Phillip Morris USA, Inc.*, 223 F.R.D. 1, 10 (D.D.C. 2004) (stating that "Rule 26(a)(2)(B) was designed in order to avoid blind siding the opposing party and creating 'an ambush at trial'" when expert witnesses offer significant, "new" opinions that differ from those submitted in their written reports) (citation omitted)). However, this Court finds no such surprise related to Mr. Yospe's intended testimony. In the approved Rule 26 report, Mr. Yospe clearly stated his opinion that failure to comply with anti-kickback laws did not necessarily render providers ineligible for Medicare reimbursement and that HHS continued to pay these providers' claims. (*See* Ex. 1 to Docket No. 103 at 15.) Based on this previously disclosed opinion, the Court cannot hold that relator was unaware that DTCA would present testimony that compliance with the Anti-Kickback Statute was not a condition precedent to the government's decision to pay Medicare claims. Even if this Court were to hold that approval of the specific *condition precedent* opinion was never sought, the Court would not alter its ruling because the *condition precedent* opinion would merely be an elaboration upon that which was stated in Mr. Yospe's report—that violators of the statute continued to receive provider payments; relator had ample warning that Mr. Yospe

would wish to introduce the *condition precedent* testimony.  *See Muldrow*, 493 F.3d at 167 (stating that Rule 26 "contemplates that the expert will supplement, elaborate upon, and explain . . . his report in his oral testimony").

Relator further argues that Anti-Kickback Statute compliance is material to the submission of Medicare claims as a matter of law and cites several cases of felony convictions of medical providers to demonstrate this point.  *See, e.g., United States v. Lahue*, 261 F.3d 993 (10th Cir. 2001) (upholding a conviction of a group of doctors in an illegal referrals scheme); *United States v. Rogan*, 459 F. Supp. 2d 692, 714 (N.D. Ill. 2006) (stating that "[c]ompliance with the Anti-Kickback Statute is a condition of payment by Medicare and Medicaid Programs"). This Court does not find that citation to instances of government enforcement of anti-kickback provisions necessarily compels preventing Mr. Yospe from asserting his opinions. Assuming that it is the government's policy to enforce anti-kickback laws, Mr. Yospe's expert opinions regarding his personal experience at HHS remain relevant to the question of the extent to which  such a policy was effectively implemented.

## III.    CONCLUSION

For the above reasons, this Court concludes that relator, A. Scott Pogue's motion for a protective order to prevent the deposition of Eric Yospe shall be DENIED.  The submitted Rule 26 report regarding Mr. Yospe's intended expert testimony is deemed approved and the parties shall move forward on the basis of that report.

A separate order shall issue this date.

Signed by United States District Judge Royce C. Lamberth on November 6, 2007.