**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES *ex rel.* | : | CIVIL ACTION FILE |
| SCOTT POGUE | : | NO. 99-3298 (RCL) |
| | : | |
| Plaintiff and Relator, | : | (Part of 2001-MS-50)(RCL) |
| | : | |
| v. | : | JUDGE ROYCE C. LAMBERTH |
| | : | |
| DIABETES TREATMENT CENTERS | : | |
| OF AMERICA, *et al.* | : | |
| | : | |
| Defendants. | : | |

**RELATOR A. SCOTT POGUE'S MEMORANDUM IN OPPOSITION
TO DTCA'S MOTION TO REOPEN FACT DISCOVERY
TO DEPOSE FRANK CIPOLLONI**

**I.     Introduction.**

DTCA seeks to reopen discovery to depose CMS representative Frank Cipolloni to "explore the nature and extent of his knowledge." Doc. 198 at 3. DTCA has not shown good cause to re-open discovery to examine Mr. Cipolloni. DTCA has been on notice of the nature and extent of claims data subpoenaed from CMS since 2003. DTCA never sought to depose any witness regarding the data, choosing instead to lie in wait until long after discovery closed to launch its authenticity arguments regarding the subpoenaed data.

DTCA has not shown good cause for its "exploratory" examination. Establishing authenticity is not a heavy evidentiary burden.[1] DTCA has neither sought nor agreed to a stipulation of authenticity, as could easily be done before

---

[1] Lexington Insurance Co. v. Western Pennsylvania Hospital, 423 F.3d 318, 328 (3d Cir. 2005) (observing that "[t]he burden of proof for authentication is slight"); Thanongsinh v. Board of Education, 462 F.3d 762, 779 (7th Cir. 2006) ("Rule 901 does not erect a particularly high hurdle").

trial.[2] DTCA has not articulated any additional bases to challenge the authenticity of the data, nor has it established how examination of Mr. Cipolloni relates to authentication of the CMS claims data.

Rule 901(a), Fed. R. Evid., requires the proponent of evidence to make a *prima facie* showing that the evidence is what is claimed. In response to DTCA's authenticity challenges, Relator submitted numerous documents to establish that the subpoenaed data is what it is claimed to be, including the declaration of Mr. Cipolloni.[3] Relator has not yet identified his trial witnesses, nor is he yet required to do so. Plainly, it is not yet apparent whether authenticity will be at issue at trial, or whether it will be resolved by pre-trial motion or stipulation.

DTCA had ample notice and opportunity to seek the deposition of a CMS representative regarding the data produced to it in 2003 and 2004. It has not articulated any basis for deposing a representative now. Indeed, DTCA's supposed need to explore Mr. Cipolloni's personal knowledge appears to bear more relationship to a challenge to the sufficiency of the evidence, rather than the authenticity. DTCA should not be permitted to transform an authenticity

---

[2] DTCA did not confer with the United States prior to the filing of its motion. However, since that time, the United States has conferred with DTCA and offered to enter into a stipulation to the authenticity of the data. The United States has solicited and received Relator's consent to such a stipulation, but has received no response from counsel for DTCA.

[3] The Court did not hold, as DTCA appears to suggest, that Mr. Cipolloni's declaration is the only acceptable evidence of authentication at trial. Rather, because the Court accepted Mr. Cipolloni's declaration as evidence of authentication for summary judgment purposes, the Court stated: Therefore, it is unnecessary to analyze further the admissibility of other contested exhibits proffered by relator." Doc. 196, July 21, 2008 Mem. Op. at 12.

argument into a belated opportunity to embark on a fishing expedition regarding the defenses it apparently seeks to assert regarding Relator's damage model.

DTCA made no efforts to develop such defenses during discovery, despite repeated notice of the CMS subpoenas and the responses. As DTCA could have reasonably anticipated, Relator is entitled to have the subpoenaed data authenticated by the subpoenaed party.

DTCA's belated attempt to conduct discovery which it could have done years ago should be denied.

**II.     DTCA Has Been on Notice of Relator's Use of Claims Data to Support Damage Claims Since 2003.**

DTCA has been on notice of Relator's subpoenas to the United States for the claims data since July 15, 2003 (Ex. 1, July 15, 2003 Notice; and Ex. 2, July 17, 2003 Letter enclosing copies of subpoenas *duces tecum*). Relator produced a disk containing the claims data regarding the West Paces medical directors on July 23, 2003 (Ex. 3) and a second disk containing the claims data for all other medical directors on August 6, 2004 (Ex. 4).

The use of this claims data to support Relator's damage theory has been the subject of many discussions among the parties. In August 2003, shortly after the production of the first disk, Relator, DTCA and the United States engaged in extensive discussions regarding the information produced and the manner and method that such information would be used to generate a damage model. At that meeting and thereafter, DTCA counsel asked many questions regarding the claims data obtained and the resulting damage model. Indeed, at DTCA's request, Relator supplemented his interrogatory responses to illustrate the use of

the claims data in support of his damage model (Ex. 5, September 8, 2003 Supplemental Responses).

Thus, the claims data obtained by Relator was by no means snuck through the back door in discovery. Much the opposite: As related in a letter to DTCA counsel regarding some of these discussions, DTCA "received personal notice of the nature, extent, and expected production regarding Relator's subpoenas *duces tecum*" (Ex. 6 at 3). In fact, in 2003, because the parties were engaged in settlement discussions and the larger data request involved significant time and expense, Relator and the United States agreed to postpone the Government's response to the second subpoena until the parties determined whether discussions would be productive. Based on that commitment, Relator did not even proceed with the data request to CMS regarding all DTCA medical directors until counsel had secured DTCA's consent to proceed (Ex. 6 at 2).

In January 2006, during expert discovery, DTCA counsel conferred with Relator's counsel regarding the production of the disks, to confirm that the data on the two disks provided was the data also being used by Relator's expert (Ex. 7, January 4, 2006 letter). Relator's counsel responded to that letter, confirming that the data produced was the data being used by Relator's expert, and also re-producing the second disk and enclosure letter to ensure the parties were working with the identical data set (Ex. 8, January 13, 2006 letter). [4]

---

[4] As described in Relator's prior opposition briefing (Doc. 182 at 109-110), CMS provided data in response to Relator's second subpoena for all medical directors' claims in January 2004; and then replaced that disk with more complete data in April 2004. After verifying that the April 04 disk completed the United States' production pursuant to subpoena, Relator provided the second disk to DTCA on August 6, 2004, along with the specifications from CMS (Ex. 4).

### III. Continuing the Tactics Which Have Been Its Hallmark, DTCA Falsely Implies That Relator Did Not Properly Supplement His Discovery Responses.

DTCA suggests that Relator had a duty to serve supplemental discovery responses identifying a person designated by CMS to authenticate the data subpoenaed and provided by that agency. This is not so. DTCA was aware that the data was subpoenaed, and can reasonably expect that a producing party could be called upon to authenticate data produced, if the authenticity of that data was challenged. In fact, federal regulation provides that "upon request, DHHS agencies will certify, pursuant to 42 U.S.C. 3505, the authenticity of copies of records that are to be disclosed." 45 C.F.R. § 2.6.

More to the point, the parties have not yet been required to disclose their trial witnesses. D'Onofrio v. SFX Sports Group, Inc., 247 F.R.D. 43, 53-54 (D.D.C. 2008) (no requirement for Relator to disclose his trial witnesses until the pretrial statement); *see also* L.R. 16.5(b)(1)(iv) (a party's Pretrial Statement shall contain a "schedule of witnesses to be called by the party"); Fed R. Civ. P. 26(a)(3)(A)(i) (identification of witnesses must occur no later than 30 days prior to trial); Fed. R. Civ. P. 16(c)(2)(G) (providing that a court may, at a pretrial conference, take "appropriate action" with respect to "identifying witnesses").

Initial disclosures were not required in this case and DTCA did not serve a discovery request asking for the identification of trial witnesses. Rather, DTCA served a request in June 30, 1998 seeking individuals likely to have knowledge regarding facts alleged in the pleadings and any defense thereto. While Relator has supplemented his responses since that time with names of additional fact

witnesses, Rule 26 only requires supplementation of discovery responses if the additional information was not "otherwise [ ] made known to the parties in the discovery process or in writing." Fed. R. Civ. P. 26(e).[5]  DTCA knew Relator subpoenaed CMS for this data in 2003 and knew that claims data was received in response to those subpoenas in 2003 and 2004 from Office of Information Services, Enterprise Databases Group, at CMS.

Though DTCA has known about this fact for more than five years (and approximately two years before the close of discovery in November 2005), DTCA never noticed the deposition of a CMS representative regarding its apparent claims regarding the sufficiency of the data.  DTCA cannot now claim surprise that CMS would authenticate the data it provided in response to subpoena.  Relator surely would not be precluded from calling *any* subpoenaed party from identifying and authenticating responsive information at trial.

### IV.     DTCA Has Not Shown Good Cause to Re-Open Fact Discovery.

DTCA's Motion to Reopen Discovery requires modification of this Court's August 23, 2005 Scheduling Order (Doc. 78) under Rule 16(b) and requires a

---

[5] DTCA implies that the Cipolloni declaration was not produced in response to a February 1, 2002 Request for Production of Documents seeking all documents exchanged between Relator and the United States (Doc. 198 at 2). Notwithstanding that Relator objected to this request on the basis of attorney-client privilege, work product, and joint privilege, Relator agreed to provide certain documents, including materials attached to his Disclosure Statement to the United States.  In 2003 and 2004, Relator gave Notice of the Subpoenas to the United States for claims data and provided the responsive data produced. Mr. Cipolloni's declaration was dated July 7, 2008, and it was served on DTCA that same day.  This declaration was provided in support of Relator's opposition to summary judgment. Fed. R. Civ. P. 56(c) permits opposing affidavits to be served before the day of hearing.

showing of good cause.  Fed. R. Civ. P. 16(b); *see also* L.Civ.R. 16.4 ("The court may modify the scheduling order at any time upon a showing of good cause.").

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." St. Paul Mercury Ins. Co. v. Guest Services, Inc., 2007 U.S. Dist. LEXIS 39606 *18 (D.D.C. June 1, 2007) *quoting* Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (other internal citations omitted). "[A]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." Id. at *19-20, *quoting* Johnson at 609.  "If that party was not diligent, the inquiry should end." Id.

Under Rule 16's "good cause" standard, Relator submits that DTCA is required to show that the modification of the discovery deadline to take a deposition is necessary "because of matters which *could not have been reasonably foreseen or anticipated…*" St Paul Mercury, at *21; *see also* DAG Enters., Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 106 (D.D.C. 2005).  Of note, "'[t]he existence or degree of prejudice to the party opposing modification may supply an additional reason to deny a motion to modify a scheduling order, but it is irrelevant to the moving party's exercise of diligence and does not show good cause.'" St Paul Mercury, at *24, *quoting* DAG Enters., 226 F.R.D. at 110 (*quoting* 3 Moore's Federal Practice § 16.14[b] (2003)). [6]

---

[6] *Cf.* Childers v. Slater, 197 F.R.D. 185, 188 (D.D.C. 2000), which set forth:

> Courts have identified several relevant factors in reviewing motions to reopen discovery: (1) whether trial is imminent; (2) whether the request is

DTCA was not deprived of the opportunity to seek discovery from CMS (or anyone else, including the experts evaluating the data). DTCA was on notice of the subpoenas issued to CMS and responsive data received from CMS' Office of Information Services. From Relator's Interrogatory Responses and many discussions regarding the use of the data, DTCA could have reasonably foreseen and anticipated that the claims data would be offered as evidence at trial. DTCA never raised its authenticity challenges and never sought to depose a representative from CMS's Office of Information Services regarding the disks provided. In fact, the only query DTCA made was to confirm that the parties were working with the same data set (see Exs. 6-7).

There can be no reasonable dispute that the data in response to Relator's subpoenas are what they claim to be. As DTCA's counsel well knows, data requests of this nature are routinely made in healthcare fraud cases, and such requests were made in this case more than five years ago. DTCA could have resolved its questions regarding authentication years ago. Having raised its challenge on summary judgment and having been provided satisfactory evidence of authentication, DTCA could enter into a stipulation regarding the authenticity of records. While Relator certainly preserves his right to call witnesses to authenticate records, Relator has not yet named its trial witnesses and cannot

---

opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that discovery will lead to relevant evidence.

Citing Smith v. United States, 834 F.2d 166, 169 (10th Cir. 1987) (citing Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1213 (3d Cir. 1984)).

yet predict what issues will or will not be resolved pre-trial. Notwithstanding these facts, DTCAS seeks to "explore" the knowledge of Mr. Cipolloni.

DTCA's motion illustrates that its real argument is not about authentication, but about its challenges to the damage theory in this case. That question is appropriate reserved for trial. DTCA should not be permitted to attempt to re-create the record and waste additional resources with its exploration deposition of Mr. Cipolloni, almost three years after the close of discovery and five years after it received notice that the agency Mr. Cipolloni represents was producing data.

### V.  Conclusion.

Relator respectfully requests that DTCA's Motion to Reopen Discovery be denied.

Respectfully submitted,

/s/ Jennifer M. Verkamp
Jennifer M. Verkamp
Frederick M. Morgan, Jr.
MORGAN VERKAMP LLC
700 Walnut Street, Suite 400
Cincinnati, Ohio  45202
Telephone:  (513) 651-4400

Don P. McKenna
Scott A. Powell
HARE, WYNN, NEWELL & NEWTON
Massey Building, Suite 800
2025 Third Avenue North
Birmingham, Alabama 35203
Telephone: (205) 328-5330

**Counsel for Relator A. Scott Pogue**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of August 2008, a copy of the foregoing was served on all counsel via the Court's electronic service system.

/s/ Jennifer M. Verkamp