UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES *ex rel.* <br> SCOTT POGUE <br><br> Plaintiff and Relator, <br><br> v. <br><br> DIABETES TREATMENT CENTERS <br> OF AMERICA, *et al.* <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 99-3298 (RCL) <br><br> (Part of 2001-MS-50)(RCL) <br><br> JUDGE ROYCE C. LAMBERTH |

### RELATOR'S SECOND SUPPLEMENTAL RESPONSE TO
### DTCA'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Relator A. Scott Pogue submits the following second supplemental objections and responses to Diabetes Treatment Centers of America, Inc.'s First Set of Interrogatories.

#### GENERAL OBJECTIONS

Relator incorporates by reference the General Objections propounded in his previous responses to Defendants' First Set of Interrogatories.

#### INTERROGATORIES

21. Please specify the amount of damages you are seeking against each Defendant and the manner in which such amount was calculated including the specific dates for which you are seeking damages from each of the Defendants, and state the basis for the selection of these dates. If you have not liquidated your damages claim, please specify how you intend to calculate damages as to each Defendant, and what factors you contend are appropriate to consider in such calculation.

**SUPPLEMENTAL RESPONSE:**

Relator objects to this request to the extent it seeks information exempt from discovery under the attorney-client privilege and the work product doctrine. Notwithstanding these objections, Relator previously responded that the calculation of damages will include the face value of every claim submitted in connection with patients illegally referred to the diabetes treatment centers. Relator supplements this response with the following information regarding the method of calculation of damages.

Each Defendant is jointly and severally liable for causing the submission of false claims in violation of the False Claims Act. The damages resulting from Defendants' False Claims Act violations will include the following calculations.

I. **DAMAGES RESULTING FROM THE SUBMISSION OF FALSE CLAIMS ON FORMS UB-92, UB-82, and 1500.**

First, damages will be calculated based on the total amount paid by the United States for every claim submitted by hospitals with which DTCA contracted for items or services rendered patients illegally referred by DTCA's medical directors. These claims can be identified using the medical director's UPIN number, which appears on the face of the Form UB-92 submitted to the Centers for Medicare and Medicaid Services (CMS). Relator has issued subpoenas to obtain this information from CMS. Thus far, Relator has received electronic claims information for claims submitted by Drs. Bode, Black, Karpas, and Steed for the years 1991 through 1996. This information was also produced to each Defendant.

Because the patients for which claims were submitted never should have been referred to the hospitals but for Defendants' illegal conduct, the total amount of claims

paid by the United States for items and services rendered those patients is damage to the United States. Once this total amount is determined, that amount is then trebled by operation of 31 U.S.C. § 3729(a) of the False Claims Act.

Because Relator has not received the necessary documentation, he is unable to specify the amount of damages at this time. However, the partial information received from CMS regarding claims information for West Paces Medical Center can be extrapolated to provide a conservative estimate of the total amount of claims damages resulting from Defendants' fraudulent schemes at West Paces Medical Center.

Using the partial information produced by the United States for claims submitted for patients of Drs. Bode, Black, Karpas, and Steed, the damages model can be illustrated in this manner.

### A. Inpatient Claims.

1. CMS records show that the United States paid inpatient claims caused to be submitted by DTCA from 1991 through May 20, 1996 in at least the following amounts:

|  | Contract years | Total for 1991- 5/20/96 only |
|---|---|---|
| Black | 7/3/86 - 12/31/97 | $3,412,382.34 |
| Bode | 1/1/85 - 12/31/97 | $2,140,425.06 |
| Karpas | 12/1/87 - 12/31/94 | $117,543.47 |
| Steed | 9/1/87 - 12/31/96 | $23,655.70 |
|  | **Subtotal** | $5,694,006.57 |

2.  DTCA caused false claims to be submitted by West Paces from July 1987[1] through May 20, 1996 (contract years). These numbers are missing several years of claims information. Calculating each medical director's average yearly claims[2] and extrapolating for the missing years results in the following additional amounts:

|  | Contract years | Average value of claims per year | Multiplier | Total for July 1987 - 1990 only |
|---|---|---|---|---|
| Black | 7/3/86 - 12/31/97 | $675,933.09 | 3.5 | $2,365,765.82 |
| Bode | 1/1/85 - 12/31/97 | $429,329.33 | 3.5 | $1,502,652.67 |
| Karpas | 12/1/87 - 12/31/94 | $39,176.15 | 3 | $117,528.45 |
| Steed | 9/1/87 - 12/31/96 | $4731.14 | 3.25 | $15,376.21 |
|  |  |  | **Subtotal** | **$4,001,323.15** |

3.  The extrapolated number undervalues the true amount because:

   a.  It is based on only a partial reporting from CMS for years prior to the time period when claims were required to be submitted electronically.

   b.  This partial reporting is particularly apparent for 1991, where CMS data showed only $90,480.55 in total reimbursement associated with all doctors for 1991. This number was not extrapolated.

   c.  It does not include any claims caused to be submitted by Dr. Davidson, whose UPIN number was not identified on any electronic claims though his name appears on DTCA census logs as the

---

[1] July 1987 represents the approximate date the diabetes treatment center was transferred from Shallowford to West Paces.

[2] The numbers for Drs. Black, Bode, and Steed are based on claims paid from January 1992 through December 1996. The number for Dr. Karpas is based on claims paid from January 1992 through December 1994, his contract termination date. The 1991 data was not incorporated, as CMS produced virtually no data for 1991.

- 4 -

referring doctor.

4. Based on (1) and (2), a conservative estimate of the value of inpatient claims caused to be submitted by DTCA and the Atlanta Physicians at West Paces from July 1987 through May 20, 1996 is:

| Conservative Estimate of Damages for Inpatient Claims Submitted By West Paces | $9,695,329.72 |
|---|---|

**B.   Outpatient Claims.**

1. CMS records show that the United States paid outpatient claims caused to be submitted by DTCA from 1992 through May 20, 1996 in at least the following amounts:

|  | **Contract years** | **Total for 1992- 5/20/96 only** |
|---|---|---|
| Black | 7/3/86 - 12/31/97 | $94,985.34 |
| Bode | 1/1/85 - 12/31/97 | $45,535.9 |
| Karpas | 12/1/87 - 12/31/94 | $3,926.49 |
| Steed | 9/1/87 - 12/31/96 | $702.46 |
|  | **Subtotal** | **$145,150.19** |

2. These numbers are missing several years of claims information. Calculating each medical director's average yearly claims and extrapolating for the missing years results in the following additional amounts:

|  | Contract years | Average value of claims per year[3] | Multiplier | Total for July 1987 - 1991 only |
|---|---|---|---|---|
| Black | 7/3/86 - 12/31/97 | $19,786.43 | 4.5 | $89,038.94 |
| Bode | 1/1/85 - 12/31/97 | $1,391.37 | 4.5 | $6,261.17 |
| Karpas | 12/1/87 - 12/31/94 | $1521.53 | 4 | $6,086.12 |
| Steed | 9/1/87 - 12/31/96 | $175.62 | 4.25 | $746.39 |
|  |  |  | **Subtotal** | $102,132.61 |

3. Based on (1) and (2), a conservative estimate of the value of outpatient claims caused to be submitted by DTCA from July 1987 through May 20, 1996 is:

| Conservative Estimate of Damages for Outpatient Claims Submitted By West Paces | $247,282.80 |
|---|---|

### 3. Home Health Claims.

1. CMS records show that the United States paid home health claims caused to be submitted by DTCA from 1992 through May 20, 1996 in at least the following amounts:

|  | Contract years | Total for 1992- 5/20/96 only |
|---|---|---|
| Black | 7/3/86 - 12/31/97 | $35,090.12 |
| Bode | 1/1/85 - 12/31/97 | $55,815.96 |
| Karpas | 12/1/87 - 12/31/94 | $9,391.88 |

---

[3]The numbers are based on claims paid from January 1992 through December 1995.

| | | |
|---|---|---:|
| Steed | 9/1/87 - 12/31/96 | $0.00 |
| | **Subtotal** | $100,297.96 |

2. These numbers are missing several years of claims information. Calculating each medical director's average yearly claims and extrapolating for the missing years results in the following additional amounts:

| | Contract years | Average value of claims per year[4] | Multiplier | Total for July 1987 - 1991 only |
|---|---|---|---|---:|
| Black | 7/3/86 - 12/31/97 | $6015.915 | 4.5 | $27,071.62 |
| Bode | 1/1/85 - 12/31/97 | $12,573.61 | 4.5 | $56,581.25 |
| Karpas | 12/1/87 - 12/31/94 | $4688.44 | 4 | $18,753.76 |
| Steed | 9/1/87 - 12/31/96 | $0.00 | 4.25 | $0.00 |
| | | | **Subtotal** | $102,406.62 |

3. Based on (1) and (2), a conservative estimate of the value of home health claims caused to be submitted by DTCA from July 1987 through May 20, 1996 is:

| | |
|---|---|
| Conservative Estimate of Damages for Outpatient Claims Submitted By West Paces | $202,704.58 |

---

[4]The numbers are based on claims paid from January 1992 through December 1995, with the exception of Dr. Karpas for which only two years of information was available.

### D. Total Claims Damages.

Thus, based on the partial information received from CMS, a conservative estimate of the total amount of damages resulting from claims DTCA caused to be submitted at West Paces prior to May 20, 1996 is:

| Conservative Estimate of Damages for Claims Submitted By West Paces | $10,145,317.10 |
|---|---|

This amount will be trebled by operation of law, yielding total damages against the Defendants with respect to DTCA's and Atlanta Physicians' violations of the False Claims Act at West Paces Medical Center in the amount of at least $30,435,951.30.

## II. DAMAGES CAUSED BY THE FALSE SUBMISSION OF FORMS 2552 (COST REPORT IMPACT DAMAGES).

Second, damages will be calculated based on the total amount paid by the United States for the amount of illegal kickbacks paid medical directors as a result of their inclusion on the hospital's annual cost reports. The inclusion on cost reports of costs incurred by hospitals for fees paid to DTCA to fund illegal kickbacks to medical directors is damage to the United States. These damages are calculated by identifying the amount of such costs and multiplying that amount by the rate at which the United States reimbursed the hospitals for those costs. For example, for West Paces Medical Center, the total amount of illegal kickbacks paid to DTCA medical directors through May 20, 1996 is at least 1,157,639.00.[5] This number is conservative, as it only includes

---

[5] Though not included in this calculation, Relator alleges that inclusion on cost reports of any of the management fee paid to DTCA—including amounts over and above the amount of the medical director fees—was not proper, and damages the United States.

the medical directors' fixed payments, and does not include variable fees, income guarantees, loan amounts, rent, and other remuneration. The amount of cost report impact damages applicable to claims submitted by West Paces can be calculated by multiplying the aforementioned number by the applicable rate of reimbursement by Medicare for the relevant cost centers on the hospital's cost reports,.

## III.   CIVIL PENALTIES.

In addition to these damage calculations, the False Claims Act imposes civil penalties on Defendants for their violations of the False Claims Act. Under 31 U.S.C. § 3729(a), every claim that Defendants caused to be submitted results in the assessment of a civil penalty of not less than $5000 and not more than $10,000. Thus, Defendants are jointly and severally liable for civil penalties of not less than $5000 and not more than $10,000 for every Form UB-92, UB-82, 1500, and 2552 caused to be submitted by their acts in violation of the False Claims Act. Based on the partial information produced by CMS and using the model illustrated above, the total number of claims caused to be submitted at West Paces between July 1987 and May 20, 1996 is at least 4,040.

hereby declare, under penalty of perjury under the laws of the United States of America, that the foregoing interrogatory answers are true and accurate to the best of my knowledge, information, and belief.

__9-5-03__
Date

*A. Scott Pogue* (signature)

A. Scott Pogue

As to objections:

*James B. Helmer, Jr.* / *Jennifer M. Verkamp* (signatures)

James B. Helmer, Jr.
Frederick M. Morgan, Jr.
Jennifer M. Verkamp
HELMER, MARTINS & MORGAN
 CO., L.P.A.
Fourth & Walnut Centre, Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 421-2400

Scott A. Powell
Don McKenna
HARE, WYNN, NEWELL
 & NEWTON
Massey Building, Suite 800
290 21st Street North
Birmingham, Alabama 35203
Telephone: (205) 328-5330

Counsel for Relator Pogue

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September 2003, a copy of the foregoing was served via facsimile and overnight mail upon:

Bryan E. Larson, Esq.
BASS, BERRY & SIMS, PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238-0002
Attorneys for Defendant Diabetes Treatment Centers of America, Inc.

Stephen Riley, Esq.
Amy Everhart, Esq.
BOWEN, RILEY, WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, Tennessee 37203
Attorneys for Defendant West Paces Medical Center

John S. Despriet, Esq.
Dana Richens, Esq.
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Attorney for Defendants Atlanta Physicians

Jonathan L. Diesenhaus, Esq.
Laura Laemmle, Esq.
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
601 D Street, N.W., Room 9730
Washington, D.C. 20530

*Jennifer M Verkamp*