UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES *ex rel.* A. SCOTT POGUE, <br><br> Plaintiff <br><br> v. <br><br> DIABETES TREATMENT CENTERS OF AMERICA, Inc., *et al.*, <br><br> Defendants. | Civil Action No. 99-3298 (RCL) <br> Part of Misc. No. 01-50 (RCL) |

## MEMORANDUM OPINION

On July 21, 2008, this Court issued a Memorandum Opinion [196] and Order [197] granting in part and denying in part defendant Diabetes Treatment Centers of America, Inc.'s ("DTCA") motion [167] for summary judgment. Now before the Court comes defendant's motions [198] to reopen fact discovery to depose Frank Cipolloni and [199] to reconsider summary judgment order or alternatively [200] to certify summary judgment order for appeal. Upon full consideration of the motions, relator A. Scott Pogue's opposition briefs,[1] the replies, the entire record herein, and applicable law, this Court finds, for the reasons set forth below, that defendant's motions will be DENIED.

---

[1] The United States has filed a statement of interest [205] in opposition to DTCA's motion to reopen fact discovery, which the Court also considers.

I.  **MOTION TO RECONSIDER**

   A.  **Legal Standard: Reconsideration Under Rule 54(b)**

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. *Cobell v. Norton*, 224 F.R.D. 266, 271 (D.D.C. 2004). (Lamberth, J.) (citations omitted).

> Importantly, the standard for reconsideration of interlocutory orders under Rule 54(b) is distinct from the standard applicable to motions for reconsideration of final judgments. The precise standard governing Rule 54(b) reconsideration is unsettled in our Circuit, but it is clear that "courts have more flexibility in applying Rule 54(b)" than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b). *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004). For example, our Court has held that Rule 54(b) reconsideration may be granted "as justice requires." *APCC Servs., Inc. v. AT & T Corp.*, 281 F. Supp. 2d 41, 44 (D.D.C. 2003); *Campbell v. DOJ*, 231 F. Supp. 2d 1, 7 (D.D.C. 2002) (quoting *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000)); *M.K. v. Tenet*, 196 F. Supp. 2d 8, 12 (D.D.C. 2001).

*Id.* at 272. This Court, noting that it retains "broad discretion to grant or deny a motion for reconsideration," will adhere to the "as justice requires" standard and ask "whether reconsideration is necessary under the relevant circumstances." *Id.* at 272–73; *see Scott v. District of Columbia*, 246 F.R.D. 49, 51 (D.D.C. 2007) (applying "as justice requires" standard and noting that trial courts have discretion in determining whether to grant reconsideration).

   B.  **The Court Will Deny Reconsideration**

Defendant seeks reconsideration of a portion of the Court's decision that denied summary judgment as to the 187 DTCA medical directors whose patients' Medicare claims do not appear on the data produced by CMS official Frank Cipolloni.[2] (*See* Mot. Recons. at 2.) DTCA's

---

[2] Mr. Cippolloni's data includes claims related to 89 medical directors. (*See* Listing of Medical Directors, Ex. 3 to Def.'s Reply [190] (highlighting the 89 medical directors appearing on relator's compact discs).)

challenge relates to the first element of an Anti-Kickback Statute ("AKS") violation, which is also the first element of False Claims Act ("FCA") liability: that the defendant must have submitted a claim to the government. (*See* Mem. Op. [196] at 11 (citing *United States v. Miles*, 360 F.3d 472, 479–80 (5th Cir. 2004) (setting forth AKS elements)); *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 57 (D.D.C. 2007) (Lamberth, J.) (setting forth FCA elements). Defendant's motion to reconsider neither questions the Court's decision that relators may pursue AKS violations under the FCA nor the Court's analysis as to the remaining two elements of an AKS violation: (1) remuneration to physicians with a purpose to induce referrals and (2) knowledge.

According to defendant's theory, summary judgment should be granted anytime there is not direct evidence as to a specific physician's claim submissions. (*See* Def.'s Reply [208] at 2.) Under the circumstances presented, this Court did not reach that conclusion. As explained below, DTCA offers nothing new that causes the Court to question its previous ruling.

The Court allowed circumstantial evidence of claim submission to defeat defendant's summary judgment motion. Specifically, the direct claim evidence relating to 89 of 276 medical directors was "sufficient evidence of claim submission in general" for the Court to allow claims against the remaining 187 DTCA medical directors to withstand summary judgment. (*See* Mem. Op. [196] at 13–14 (citing *United States ex rel. El-Amin v. George Washington Univ.*, 522 F. Supp. 2d 135, 141–42 (D.D.C. 2007).) Without pointing to authority contrary to the Court's conclusion, defendant simply argues that the Court was wrong to find "clear guidance" in *El Amin*.[3]

---

[3] Defendant, in a footnote, directs the Court to an opinion in this Circuit that stands for the proposition that "[t]he FCA . . . 'attaches liability, not to underlying fraudulent activity, but to

In *El-Amin*, the "precise question raised" was "whether [relators] may proceed without having the actual [Medicare] claim forms." *See* 522 F. Supp. 2d at 142.  Rather than claim forms, relators there possessed a "mountain of billing documents" that allegedly demonstrated defendant's filing of Medicare claims.  *See id.*  These documents served as circumstantial evidence that claims were submitted to Medicare; they were sufficient to withstand defendant's summary judgment motion.  *See id.* at 143 (citing *United States v. Williams*, 216 F.3d 1099, 1103 (D.C. Cir. 2000) (noting that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence")).  As DTCA points out, in *El-Amin*, there was at least some claim evidence as to each of the fifteen physicians in question.  (*See* Mot. Recons. at 3 (citing *El-Amin*, 522 F. Supp. 2d at 137–38).)  Thus, while *El-Amin* clearly stands for the propositions that circumstantial evidence of claim submission may create a genuine issue of material fact and that inability to produce the actual claim form is not determinative, *see* 522 F. Supp. 2d at 143, that case did not present the precise issue of whether evidence of claim submission as to a subset of physicians can create a genuine issue of material fact as to a related subset of physicians.  In denying summary judgment, this Court answered—and continues to answer—that question in the affirmative.[4]  This conclusion is

---

the claim for payment.'"  *See United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C. Cir. 2002) (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)).  This Court does not view its Opinion as in conflict with this basic FCA requirement.  If the trier of fact does not find that the element of claim submission is met for certain physicians, relator's causes of action as to those physicians will fail.

[4]  The Court cautions that such a result would not likely be appropriate in all cases.  For example, in *El-Amin* the elements of claim submission and falsity were inextricably intertwined: there, relators "[a]t bottom, . . . test[ed] the merits of the Defendant's billing practices for reimbursement under Medicare."  *See United States ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 18 (D.D.C. 2008).  Specifically, the *El-Amin* relators intended to demonstrate that anesthesiologists submitted claims for services to Medicare under the guise that

bolstered by defendant's own admission that its medical directors had a practice of referring patients to DTCA. In defendant's own words, "medical directors generally preferred admitting patients to the diabetes treatment center . . . ." (Mot. Summ. J. at 34.) In fact, one of defendant's theories is that "DTCA expected medical directors to admit their patients to the center because they believed the center was the best place for the patients." (*Id.* at 35.) Such admissions support the Court's conclusion that summary judgment was inappropriate as to claims from the 186 medical directors at issue.

For the above reasons, the Court, in its discretion, will deny DTCA's motion to reconsider.

---

procedures had been performed by an anesthesiologist when in fact the procedures were performed by residents or certified registered nurse anesthetists. *See id.* at 18. In such a situation, it is logical for claim submission or substitute evidence of Medicare billing practices to be required for each physician in question: one doctor's illegal billing practices do not necessarily taint those of his colleagues. However, in this case, the thrust of relator's allegation is a massive scheme of hiring medical directors and paying them to generate referrals to DTCA. Thus, the individual claim forms here would not offer evidence of falsity; that evidence would lie in payments to directors and the relationship between DTCA and its medical directors. As such, in this case, allowing claim submission evidence of a group of scheme participants to serve as circumstantial evidence for claim submissions of allegedly similarly situated physicians is less problematic. If the claim submissions themselves were intertwined with the evidence of falsity, the Court may have reached a different conclusion.

While claim submission remains an essential element of an FCA claim, *see United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 57 (D.D.C. 2007) (Lamberth, J.), the Court found that the circumstantial evidence of 89 medical directors' claim submissions was sufficient to defeat summary judgment as to the remaining 187 directors. At trial, to find against FCA, the jury must base liability on a certain universe of claims that relator will have the burden of establishing. It is quite possible that the fact-finder will ultimately determine that the evidence with respect to the portion of claims submitted by the 89 medical directors is insufficient. However, at summary judgment, it is inappropriate to "evaluate the strength the Relator's evidence." *See El-Amin*, 522 F. Supp. 2d at 143 n.6. The jury shall have the opportunity to determine the number of false claims, if any, submitted by defendant.

## II. INTERLOCUTORY REVIEW

### A. Standard of Review

When a district judge, in making in a civil action an order not otherwise appealable . . . , shall be of the opinion that such order involves (1) a *controlling question of law* (2) as to which there is *substantial ground for difference of opinion* and (3) that an immediate appeal from the order may *materially advance the ultimate termination of the litigation*, he shall so state in writing in such order.

28 U.S.C. 1292(b) (numbering and emphases added). "'The party seeking interlocutory review has the burden of persuading the Court that the circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 104 (D.D.C. 2005) (Lamberth, J.) (quoting *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003)).

### B. Certification Is Inappropriate

Given that the Court will deny defendant's motion to reconsider, defendant alternatively seeks certification of this Court's Memorandum Opinion and Order of July 21, 2008. Defendant requests certification of the denial of summary judgment as to claims related to the 187 medical directors discussed in Part I.B. of this Opinion.

Certification is not appropriate in this case. This case, originally filed in 1999, is finally approaching remand to the Middle District of Tennessee for trial. Consequently, the Court finds that delaying proceedings pending interlocutory review would not expedite "ultimate termination" of this litigation. *See Brown v. Pro Football, Inc*, 812 F. Supp. 237, 239 (D.D.C. 1992) (Lamberth, J.) (denying certification where "trial on damages [was] imminent"). This is particularly true where, as here, regardless of the outcome of interlocutory appeal, trial of the case would still have to occur to reach the litigation's "ultimate termination." Further, the Court

notes that defendant merely states that "there is substantial grounds for differences of opinion regarding" whether circumstantial evidence should be permitted to defeat summary judgment as to claims relating to the 187 medical directors at issue. (*See* Mot. Recons. at 6.) The Court is not persuaded by this unsupported contention. *See Singh*, 383 F. Supp. 2d at 104 (quoting *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001)) ("A mere claim that a district court's ruling was incorrect does not demonstrate a substantial ground for difference of opinion."). Thus, defendants have not convinced the Court that circumstances warrant abandoning the "basic policy" of awaiting appellate review until after entry of final judgment. Defendant's request for certification will be denied.

### III.   MOTION TO REOPEN FACT DISCOVERY

#### A.   Standard of Review

Fact discovery in this matter concluded in 2005. (*See* Scheduling Order [78] of Aug. 23, 2005). Consequently, reopening discovery would require a showing of good cause pursuant to Federal Rule of Civil Procedure 16(b)(4). Fed. R. Civ. P. 16(b)(4); *see also* LCvR 16.4 ("The court may modify the scheduling order at any time upon a showing of good cause."). This "'good cause' standard primarily considers the diligence of the party seeking the amendment." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, No. 05-cv-2115, 2007 WL 1589495, at *6 (D.D.C. June 1, 2007) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)). The focus of a court's "inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (citations omitted); *see also Hussain v. Nicholson*, 435 F.3d 359, 367 (D.C. Cir. 2006) (stating that several

circuits adhere to this standard and noting that the "primary consideration" in determining whether a district court abused its discretion was whether the movant was diligent in conducting discovery within the court's schedule).

> **B.      Defendant Fails to Establish Good Cause for Reopening Discovery**

Defendant wishes to depose Mr. Cipolloni, an individual identified by relator as having knowledge related to the two compact discs that relator provided during discovery. These discs reportedly contain the claims data relative to the 89 DTCA medical directors discussed in Part I.B. of this Opinion. Defendant asserts that prior to July 7, 2008—the date when relator responded to defendant's motion to strike these and other exhibits—it had never heard of Mr. Cipolloni and had no idea that he had information related to the two compact discs. (*See* Mot. Reopen Disc. ¶ 4). In its July 21, 2008 Memorandum Opinion, the Court found that Mr. Cipolloni could testify at trial as to the authenticity of the discs. (Mem. Op. [196] at 13.) Defendant now feels that it would be unjust for the Court to require it to forgo Mr. Cipolloni's deposition in favor of learning of the nature and extent of his testimony at trial. (*See* Mot. Reopen Disc. ¶ 8.)

At this late stage of the proceedings, the Court disagrees with defendant's assertion. Although the name Cipolloni may have been new to defendant in July 2008, relator produced its two compact discs on July 23, 2003 and August 6, 2004. (*See* Relator's Opp. to Mot. Reopen Disc. at 3 (citing Exs. 3 & 4 to Opp.)). Thus, while defendant is correct in noting that it was not "required" to verify the admissibility of the discs at an earlier time (Def.'s Reply [207] at 4), for several years defendant could have sought information regarding the authenticity of relator's claims data and chose not to do so. Instead, defendant waited until April 28, 2008 to challenge

the discs' admissibility in its motion [167] for summary judgment. Defendant had a variety of opportunities during discovery to question the data's admissibility. This decision will not unduly prejudice defendant as it will have an opportunity to cross-examine Mr. Cipolloni at trial to resolve any lingering doubts it or the jury may have as to the compact discs' authenticity.

## IV.    CONCLUSION

In light of the analysis set forth in this Opinion, and upon full consideration of defendants' motions, the opposition and reply briefs, the entire record herein, and applicable law, the Court will DENY defendant's motions [198] to reopen fact discovery to depose Frank Cipolloni and [199] to reconsider summary judgment order or alternatively [200] to certify summary judgment order for appeal.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth on September 19, 2008.